### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROSSVILLE CONVENIENCE & GAS, INC., et al.**<br><br>　　**Plaintiffs,**<br><br>　　v.<br><br>**MERRICK GARLAND, Attorney General of the United States, et al.**<br><br>　　**Defendants.** | **Civil Action No. 20-2218 (JDB)** |

### <u>MEMORANDUM OPINION</u>

In this case, plaintiffs Rossville Convenience & Gas, Inc. ("Rossville") and Mansoor Charaniya challenge a decision by the United States Citizenship and Immigration Services ("USCIS") denying Rossville's petition for an employment visa on behalf of Mr. Charaniya. The parties have filed cross-motions for summary judgment, and the Court also requested and received supplemental briefing regarding Rossville's capacity to sue and Mr. Charaniya's ability to proceed as the sole plaintiff. Briefing is now complete and the cross-motions—as well as the threshold questions identified by the Court—are ripe for decision.

For the reasons explained below, the Court concludes that Rossville lacks capacity to sue and will accordingly drop it as a party to this action. The Court nevertheless determines that Mr. Charaniya possesses both constitutional standing and a statutory cause of action to challenge the agency's denial of Rossville's petition on his behalf. That challenge, however, ultimately fails: USCIS did not abuse its discretion in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by denying Rossville's petition. The Court will thus grant defendants' motion for summary judgment and deny plaintiffs' cross-motion.

1

## Background

### I.   Statutory Scheme

The Immigration and Nationality Act, codified at 8 U.S.C. § 1101 et seq., provides that a certain number of "[v]isas shall be made available" to "skilled workers," defined as "[q]ualified immigrants who are capable . . . of performing skilled labor . . . not of a temporary or seasonal nature, for which qualified workers are not available in the United States." Id. § 1153(b)(3)(A)(i). Visas issued under this provision, known as "EB-3 visas," are permanent work visas, and a non-citizen who receives an EB-3 visa is also eligible to become a lawful permanent resident of the United States.   See id. § 1255(a); Khedkar v. USCIS, Civ. A. No. 20-1510 (RC), 2021 WL 3418818, at *1 (D.D.C. Aug. 5, 2021).

To go from visa hopeful to lawful permanent resident, the non-citizen and his American employer must follow a "three-step process."[1] E.g., Patel v. USCIS, 732 F.3d 633, 634 (6th Cir. 2013).   First, the non-citizen's employer must apply for and receive a certificate from the Department of Labor ("DOL").   See 8 U.S.C. § 1153(b)(3)(C) ("An immigrant visa may not be issued to an immigrant under subparagraph (A) until the consular officer is in receipt of a determination made by the Secretary of Labor pursuant to the provisions of section 1182(a)(5)(A) of this title."); see also 20 C.F.R. §§ 656.10, 656.17 (instructions for applying for a certification). The employer's application must, among other things, describe "the job opportunity's requirements" and the duties to be performed.   20 C.F.R. § 656.17(h)–(i); see also Joint App'x [ECF Nos. 25-1 & 25-2] ("AR") at 379–81 (Rossville's application for a DOL certification in this

---

[1] The process described here applies both to non-citizens living outside the U.S. and to those already in the country.   Although the paradigmatic case would be a non-resident alien seeking to enter the country for a job opportunity, Mr. Charaniya, who currently resides in Chattanooga, TN, see Compl. at 1, may also avail himself of this procedure.

case).[2]  DOL must then approve the employer's description of the job and certify (1) that "there are not sufficient workers who are able, willing, qualified . . . and available at the time of application . . . and at the place where the alien is to perform such . . . labor," and (2) that "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed."   8 U.S.C. § 1182(a)(5)(A)(i); see also 20 C.F.R. § 656.24(b)(2)–(3).  The description of the job's duties and requirements on the approved DOL certification then becomes the relevant measure of whether the prospective employee is qualified for the job (and therefore eligible for a visa).  See id. § 204.5(l)(3)(ii)(B).

Second, after receiving a DOL certification, the employer must file a Form I-140 Immigrant Petition for Alien Worker ("I-140 petition") with USCIS, 8 C.F.R. § 204.5(a), attaching its DOL certification, id. § 204.5(l)(3)(i), and requesting a visa for its prospective non-citizen employee as a "skilled worker," id. § 204.5(c).  Before the agency, the employer is considered the "petitioner" and is the party in whose name the I-140 petition is filed and processed, see id. § 204.5(l)(1); the non-citizen worker, by contrast, is referred to as the "beneficiary" of the petition and has little to no formal role in the adjudication of the petition, id. § 103.3(a)(1)(iii)(B) (excluding a beneficiary from the category of "affected party . . . with legal standing in a proceeding); see also Pai v. USCIS, 810 F. Supp. 2d 102, 105 & n.2 (D.D.C 2011) (noting that "the employer . . . is the only party with standing in the agency to challenge [a] decision with respect to [a] petition").

---

[2] In citing the administrative record, the Court will use the administrative record page numbers using the form "AR ###." The parties' Joint Appendix does not arrange the record materials sequentially by their AR page number, with the result that, for example, "AR 10" does not fall on page 10 of the Joint Appendix.  Cf. Certified List of the Contents of the Administrative Record [ECF No. 12].  To avoid any confusion, then, the Court will disregard any internal pagination as well as the order of materials in the Joint Appendix.

For an I-140 petition to be approvable (i.e., for the beneficiary to be eligible for a visa), the beneficiary must "meet[] the educational, training or experience, and any other requirements of the [DOL] certification."  8 C.F.R. § 204.5(l)(3)(ii)(B); accord Vemuri v. Napolitano, 845 F. Supp. 2d 125, 127 (D.D.C. 2012).  For "skilled workers," the beneficiary must have at least "two years [of] training or experience."  8 U.S.C. § 1153(b)(3)(A)(i); accord 8 C.F.R. § 204.5(l)(3)(ii)(B). The petitioning employer is responsible for providing evidence that the beneficiary satisfies these requirements,[3] 8 C.F.R. § 204.5(l)(3)(ii)(B), and that evidence must be "in the form of letter(s) from current or former employer(s) or trainer(s) [that] include the name, address, and title of the writer, and a specific description of the duties performed by the alien or of the training received." Id. § 204.5(g)(1).  If the initial evidence submitted by a petitioner is deficient, USCIS may issue a Notice of Intent to Deny ("NOID"), explaining any deficiency and requesting clarification and/or additional evidence.  Id. § 103.2(b)(8)(iv).  If the employer's I-140 petition is approved, the beneficiary "is eligible to stand in line for an immigrant visa number to be issued by the Department of State."  Pai, 810 F. Supp. 2d at 104.

Upon receiving a visa number, the beneficiary may embark on the third stage of the three-step process, becoming eligible to "adjust[] [his] status . . . to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a); accord Vemuri, 845 F. Supp. 2d at 127.  To do so, the beneficiary must file an I-485 Application for Adjustment of Status with USCIS.  See 8 C.F.R. § 245.2(a)(3)(ii); Khedkar, 2021 WL 3418818, at *1.  Although an approved I-140 petition is a prerequisite for obtaining permanent resident status, "an immigrant can sometimes file his I-485 application at the same time his employer files the I-140 petition."  Khedkar, 2021 WL 3418818,

---

[3] The petitioning employer must also demonstrate that it "has the ability to pay the proffered wage."  8 C.F.R. § 204.5(g)(2).  This requirement is not at issue in this case, which focuses solely on whether Rossville established that Mr. Charaniya met the experience requirement.

at *1.  The I-485 adjustment application then sits in limbo while the I-140 visa petition is adjudicated, to be approved or denied contingent on the outcome of the visa petition.

Originally, "[t]he petitioner of the I-140 had to remain the alien's employer until the alien's adjustment of status application was decided . . . le[aving] employees essentially tethered to particular jobs for the duration of USCIS processing, which were marked by long delays." Mantena v. Johnson, 809 F.3d 721, 733 (2d Cir. 2015).  In 2000, however, Congress enacted the "portability provision," codified at 8 U.S.C. § 1154(j), which provides that "an I-140 petition 'shall remain valid' to support an immigrant's I-485 application for permanent residency even when the immigrant changes jobs" so long as "the immigrant's I-485 application has been pending for 180 days or more and . . . the new job is 'in the same or a similar occupational classification' as the one for which the immigrant's original employer filed the petition." Khedkar, 2021 WL 3418818, at *1 (quoting 8 U.S.C. § 1154(j)).  This provision thus allows many I-140 beneficiaries the flexibility to "port" their I-485 application to a new prospective employer without having to re-start the whole process.  In order for a porting request to be approved, however, the original I-140 petition must be "valid," i.e., it must have been approvable at the time it was filed.[4] E.g., Khedkar, 2021 WL 3418818, at *6; Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 47 (D.D.C. 2011); George v. Napolitano, 693 F. Supp. 2d 125, 131 (D.D.C. 2010); Matter of al Wazzan, 25 I. & N. Dec. 359, 365–67, 2010 WL 4566196, at *6–7 (A.A.O. 2010).

---

[4] This is why the instant cross-motions for summary judgment—and the Court's decision—focus on the validity of Rossville's I-140 petition, even though Mr. Charaniya has since sought to port to a new employer.  Only after determining that Rossville's original petition was "valid" can USCIS process Mr. Charaniya's porting request.

## II.   Factual Background

### A.   Rossville's Petition

In this case, plaintiffs attempted to follow the three-step process outlined above.  First, Rossville applied for a DOL certification for Mr. Charaniya's prospective position, "Store Manager" of a "Convenience Store and Gas Station" located in Chattanooga, TN.  AR 379.  The application was received for processing on July 29, 2002, and was approved on May 2, 2003.  AR 378–79; Compl. Ex. A [ECF No. 1-2].  The approved certification gave the following description of Mr. Charaniya's proposed job duties:

> Manage operations of store; order food and gas supplies. Monitor inventory. Supervise and train employees, assign job duties, work schedules and evaluate performance. Perform daily accounting of funds and prepare banking transactions; reconcile cash with receipts.  Maintain payroll and tax accounts.

AR 379; accord Pls.' Resp. to Defs.' Mot. for Summ. J. & Pls.' Cross-Mot. for Summ. J. & Br. in Supp. [ECF No. 19] ("Pls.' Cross-Mot.") at 12.

In November 2003, Rossville filed an I-140 petition on behalf of Mr. Charaniya, see Compl. Ex. B [ECF No. 1-3]; AR 317–21, and Mr. Charaniya contemporaneously filed an I-485 Application for Adjustment of Status, see AR 265–71, 384.  Attached to its petition, Rossville submitted its approved DOL certification, AR 385, and a letter from its corporate secretary attesting to Mr. Charaniya's job offer, AR 399.  It also submitted two "experience letters" from Mr. Charaniya's previous employers discussing his tenure and responsibilities in each job: one letter, dated April 5, 2001, was from 4 B's Food Mart ("4 B's") in Oklahoma City, OK ("the 4 B's Letter"), AR 387; the other letter, dated July 4, 2002, was from Maharashtra Refrigeration ("Maharashtra"), located in Ahmednagar, India ("the 2002 Maharashtra Letter"), AR 386.

On April 22, 2009, USCIS issued a NOID with respect to Rossville's I-140 petition ("the 2009 NOID"), AR 256, explaining that, due to "numerous inconsistencies" in the experience letters

and other documentation, the agency intended to deny the petition "with [a] finding of fraud."  AR 257.  For instance, the 4 B's Letter and the 2002 Maharashtra Letter—dated fifteen months apart and allegedly sent from different countries—were identical, "contain[ing] the exact same wording" with the only difference being the "name of the company and the [signing] official and the number of personnel supervised," AR 256; see also AR 386–87 (the letters in question).  In addition, both letters contained numerous demonstrable errors.  The letterhead of the 2002 Maharashtra Letter provided an incorrect phone number, misspelled the business's address, and misspelled the company's own name by including an errant "n" ("Maharashtra Refrigernation").  AR 257; see AR 386.  Similarly, the letterhead of the 4 B's letter included a phone number that was disconnected and an address that did not exist, AR 256–57, and, despite being dated April 5, 2001, the body of the letter stated that Mr. Charaniya "worked in our company from June[]2000–July 2001," i.e., it listed an end date three months after the letter was supposedly written, AR 387.[5]  Finally, Mr. Charaniya's G-325A Biographic Information form—submitted alongside his I-485 application—stated that he lived in San Antonio, TX, from June to October of 2000 but also claimed, roughly consistent with the 4 B's Letter, that he worked as the store manager at 4 B's from May 2000 through June 2001—that is, his workplace was nearly five hundred miles away from his residence for five months in 2000.  See AR 272 (Mr. Charaniya's G-325A form).

Rossville timely responded to the 2009 NOID, explaining that the inconsistencies and errors identified by the agency were "the result of typos made in the beneficiary's experiential letters and clerical errors made by a paralegal in the preparation of the referenced application forms."  AR 160.  It further explained that 4 B's Food Mart was actually a sole proprietorship owned by Mr. Charaniya and that he had owned and managed it for only five months, from

---

[5] The NOID also noted that "4 B's Food Mart" did not appear in a search of the Oklahoma Secretary of State online database of corporation names.

December 2000 through April of 2001—the contrary dates in the 4 B's Letter were, again, the result of typographical errors.  See AR 161–62, 231.  Rossville then submitted, in its words, "a mountain of additional evidence" confirming the correct names, addresses, and telephone numbers of the businesses and corroborating Mr. Charaniya's employment by both Maharashtra and 4 B's. Pls.' Cross-Mot. at 3; see AR 160–63 (describing the additional evidence); AR 164–255 (the additional evidence).  Finally, Mr. Charaniya filed an amended G-325A that provided corrected dates for his residences and employment.  AR 248–52.

### B.  The Agency's Decisions

Eight years later, on March 15, 2017, the Director of the USCIS Texas Service Center ("TSC") denied Rossville's I-140 petition ("the 2017 Denial"), AR 324–30, and accordingly denied Mr. Charaniya's I-485 application as well, since he was not "the beneficiary of an approved immigrant visa petition," AR 129–30.   The Director reiterated the many "inconsistencies" identified in the 2009 NOID and concluded that the evidence submitted by Rossville was not credible, specifically highlighting the identical language in the experience letters, the numerous errors in the letterhead of the 2002 Maharashtra Letter, and the fact that the 4 B's Letter gave a future end date for Mr. Charaniya's tenure.  AR 325–26.  In addition, the Director found that "none of the experience letters shows that the beneficiary had performed most or all of the job duties required on the approved labor certification," AR 326, and that "[a] review of the additional evidence suggests that the beneficiary had worked . . . as a refrigerator repair mechanic but not as

a manager who performed duties claimed by the petitioner," AR 327.  Accordingly, the Director

denied the petition.[6]

Rossville appealed the 2017 Denial to the agency's highest appellate authority, the

Administrative Appeals Office ("the AAO").  See AR 18–29 (notice of appeal); see generally

AAO Practice Manual §§ 1.4, 3.2(e), uscis.gov/administrative-appeals/aao-practice-manual (last

accessed Dec. 10, 2021).  Rossville submitted a brief setting out its objections to the 2017 Denial,

AR 40–53, attaching as exhibits much of the evidence submitted in response to the 2009 NOID,

see AR 54, as well as a new letter, dated May 2017, from the "Proprietor" of Maharashtra

Refrigeration ("the 2017 Maharashtra Letter"),  AR 80.  This letter reiterated that Mr. Charaniya

served as the business's manager from 1991 to 2000, confirmed his job duties, and stated that the

errors in the 2002 Maharashtra Letter were typos by his secretary.  Id.

The AAO affirmed the denial of Rossville's petition ("the AAO Decision"), see AR 1–12,[7]

agreeing with the Director's "determination that the evidence submitted to the record regarding

the Beneficiary's prior work experience is not credible," AR 6.  The AAO, like the TSC Director,

relied on the fact that the initial experience letters were largely identical and that the 4 B's Letter

---

[6] The Director also gave two additional "independent and alternative bas[e]s for denial." AR 329.  Because Mr. Charaniya had "formed or created two companies in 2004 . . . [one of which] [wa]s still in operation," the Director found that Rossville's job offer to Mr. Charaniya was not for "full time employment." AR 327–28.  The Director also determined that Rossville had willfully made false representations of material facts to the agency and accordingly entered a finding of fraud, AR 328–30, a determination which not only justified denying the petition but would have rendered Rossville—and perhaps Mr. Charaniya—ineligible to ever receive a visa in the future, see 8 U.S.C. § 1182(a)(6)(C)(i).  On appeal, however, USCIS's Administrative Appeals Office disagreed with and formally withdrew both of these findings. AR 7, 10.  As such, these findings—and indeed the entire 2017 denial—are irrelevant to the validity of the subsequent decision by the AAO.  See, e.g., Herrera v. USCIS, 571 F.3d 881, 885 (9th Cir. 2009) ("Because the AAO's decision was the agency's final decision, we review the AAO's decision." (citing Aguilera–Montero v. Mukasey, 548 F.3d 1248, 1250 (9th Cir. 2008))); cf. Amponsah v. Barr, No. 20 C 4639, 2020 WL 7327699, at *2 (N.D. Ill. Dec. 11, 2020) (holding that service center denial was not "final agency action" when agency had reopened the matter and vacated the prior decision, as the initial denial "no longer mark[ed] 'the consummation of the agency's decisionmaking process,' and no legal consequences will flow from [it]" (quoting U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 597 (2016))).

[7] The Court will cite the version of the AAO Decision in the administrative record of this case, but the decision is also publicly available via a commercial electronic database.  See Matter of R-C-&-G, Inc., 2018 WL 4069923 (Aug. 16, 2018).

"was issued before the Beneficiary ended his employment," AR 5, and it also noted various other inconsistencies calling into question the reliability of petitioner's evidence, see AR 5–6. The AAO also determined that Rossville's "mountain" of supporting evidence failed to demonstrate that Mr. Charaniya had the requisite two years of experience. AR 6–8. While the documentation regarding Maharashtra Refrigeration—including phone book advertisements for the company, business registration certificates, and pictures of the storefront—demonstrated that the company existed, the AAO noted that they did not attest to Mr. Charaniya's role in the company or to his job responsibilities.[8] See AR 7. Likewise, the AAO explained that the provided documentation regarding 4 B's only showed that Mr. Charaniya "was the owner of 4 B's Food Mart for a short period of time between the end of 2000 and the beginning of 2001" and did not "establish that he also served as manager of the business." AR 7.

Between the incredibility of the experience letters and the inconclusivity of the other evidence, the AAO found that Rossville "ha[d] not established that [Mr. Charaniya] possessed the experience required," AR 8, and it affirmed the Director's decision to deny its I-140 petition.[9] AR 11–12. Accordingly, it also rejected Rossville's request that Mr. Charaniya be permitted to "port" to another employer under 8 U.S.C. § 1154(j), explaining that, since "the initial [I-140] petition was not approvable because the Petitioner did not establish that the Beneficiary possessed the experience required[,] . . . . the Beneficiary is not eligible to port to another employer under [§ 1154(j)]." AR 11.

---

[8] In addition, much of the additional evidence was written in Marathi but lacked a certified translation, such that USCIS could not "meaningfully determine whether the translated material is accurate and thus supported the Petitioner's claims." AR 4 n.5; see 8 C.F.R. § 103.2(b)(3) ("Any document containing foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.").

[9] As noted supra note 6, the AAO also considered and withdrew the Director's two other reasons for denying Rossville's petition. See AR 7–10.

### C.  **APA Litigation**

Rossville and Mr. Charaniya first brought suit on November 15, 2018, challenging USCIS's denial of the I-140 petition.  Compl. at 9 [ECF No. 1], <u>Rossville Convenience & Gas, Inc. v. Barr</u>, 453 F. Supp. 3d 380 (D.D.C. 2020) (Civ. A. No. 18-2630-ABJ).  The government moved to transfer or dismiss the case, and on April 8, 2020, Judge Amy Berman Jackson dismissed plaintiffs' complaint without prejudice under Rule 12(b)(6).  <u>See Rossville Convenience & Gas</u>, 453 F. Supp. 3d at 389–91.  Plaintiffs then filed the instant suit on August 12, 2020, Compl. [ECF No. 1], and the government again moved to transfer the case to either the Northern or Southern District of Texas, <u>see</u> Defs.' Mot. to Transfer [ECF No. 6].  This Court, agreeing with Judge Jackson's previous analysis, denied the motion on February 23, 2021.  <u>See</u> Mem. Op. & Order [ECF No. 9].  The parties then submitted cross-motions for summary judgment.

Plaintiffs attack the AAO's decision as arbitrary and capricious, heavily emphasizing that a petitioner must establish visa eligibility only by a preponderance of the evidence, <u>see</u> Pls. Cross-Mot. at 5–8, while accusing the agency of "assuming facts not in evidence," <u>id.</u> at 5; <u>see id.</u> at 10–11, and of ignoring or improperly weighing the evidence submitted by Rossville, <u>id.</u> at 13–18.  Plaintiffs accordingly ask the Court to grant summary judgment in their favor and issue a declaratory judgment stating that Mr. Charaniya satisfied the relevant experience requirements and that Rossville's I-140 petition is approvable.  <u>Id.</u> at 20; Compl. [ECF No. 1] at 13–14.  Defendants, naturally, disagree, <u>see generally</u> Defs. Mot. for Summ. J. [ECF 15] ("Defs.' Mot."), defending the AAO's decision and arguing that the "contradictions" in plaintiffs' supporting evidence "along

with missing and incorrect information did not establish that Mr. Charaniya had the requisite two years' experience as a manager," Defs.' Mot. at 17.[10]

After reviewing the parties' submissions and the administrative record in this case, the Court noticed that Rossville appears to be "administratively dissolved" under the law of Tennessee.  Accordingly, the Court <u>sua sponte</u> ordered both parties to address whether "Rossville possess[es] capacity to sue" and, if not, "whether this action may proceed without Rossville as a plaintiff."  <u>See</u> Order to Show Cause [ECF No. 26] at 2.  Both parties timely submitted responses to the Court's Order.  Briefing—on both the parties' cross-motions for summary judgment as well as the threshold questions raised by the Court—is now complete, and the matter is ripe for decision.

<u>Analysis</u>

I.  <u>Rossville's Capacity to Sue</u>

Rossville Convenience & Gas, Inc., the lead plaintiff in this case and the petitioner before the agency, is a corporation organized under the laws of the State of Tennessee.  <u>See</u> Business Entity Detail: Rossville Convenience & Gas, Inc., Tenn. Sec. of State, https://tnbear.tn.gov/Ecommerce/FilingDetail.aspx?CN=13321013508722502310919517707306 8201040217244181 (last visited Dec. 3, 2021).  Since August 9, 2012, however, Rossville has been "administratively dissolved."  <u>See</u> <u>id.</u>; <u>accord</u> AR 8 n.7 ("The Petitioner was administratively dissolved on August 9, 2012, in Tennessee.").  In their response to the Court's Oct. 4 Order, plaintiffs essentially acknowledge this fact: "Plaintiff Rossville currently only exists on an administrative level for purposes of tax filings and other financial matters, [and] since 2012, the

---

[10] Defendants also argue that Attorney General Merrick Garland is not a proper party in this lawsuit and ask the Court to grant judgment as a matter of law at least with respect to him.  In support, defendants note that plaintiff does not allege that the Attorney General "played any role in the adjudication of the underlying petition" or "took any actions[] that could be described as arbitrary, capricious, or contrary to law."  <u>See</u> Def.'s Mot. at 7; <u>but see</u> Pls.' Cross-Mot. at 8–9.  The Court is inclined to agree with the defendants, but, because the Court will grant judgment as a matter of law with respect to <u>all</u> parties, it will not specifically decide this question.

company has not been actively conducting business."  Pls.' Mem. of L. in Resp. to Order to Show
Cause [ECF No. 27] ("Pls.' Resp.") at 2.

An entity's capacity to sue and be sued in federal court is governed by Federal Rule of
Civil Procedure 17.  "[F]or a corporation," capacity to sue is determined "by the law under which
[the corporation] was organized." Fed. R. Civ. P. 17(b)(2).  Under Tennessee law, "[a] corporation
administratively dissolved continues its corporate existence but may not carry on any business
except that necessary to wind up and liquidate its business and affairs under § 48-24-105."  Tenn.
Code Ann. § 48-24-202(c).  Section 48-24-105(a) then provides a list of qualifying winding-up
actions, including "collecting its assets," "discharging . . . its liabilities," and generally "doing
every other act necessary to wind up and liquidate its business and affairs."  Under Tennessee law,
then, an administratively dissolved corporation may bring a lawsuit only if doing so is "necessary
to wind up and liquidate its business and affairs."  Id. §§ 48-24-105(a), 48-24-202(c); see also Gas
Pump, Inc. v. Gen. Cinema Beverages of N. Fla., Inc., Civ. A. No. 491-100, 2011 WL 13248863,
at *2–3 (S.D. Ga. Feb. 22, 2011) (stating this rule under an identical Georgia statute); 817 P'ship
v. James Goins & Carpenter, P.C., No. E2014-01521-COA-R3-CV, 2015 WL 5609993, at *8
(Tenn. Ct. App. Sept. 24, 2015) (holding that dissolved corporation "had no standing to assert a
counterclaim" six months after its dissolution).

Plaintiffs offer no argument—nor could they reasonably do so—that the present lawsuit is
"necessary" for Rossville to wind up its affairs.  To the contrary, they concede that Rossville "does
not appear to be a proper party to this action."  Pls.' Resp. at 2.  Accordingly, because Rossville
does not have capacity to sue in this matter, the Court will exercise its power under Federal Rule
of Civil Procedure 21 to "drop" Rossville as a party from this action on its own motion.  See Fed.
R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a

party."); cf. Paul Johnson Drywall Inc. v. Sterling Grp. LP, No. CV-21-01408-PHX-DWL, 2021 WL 3709851, at *3 (D. Ariz. Aug. 20, 2021) (noting that, if certain plaintiffs lack capacity to sue, dropping them under Rule 21 is the appropriate outcome).

## II.   Mr. Charaniya's Ability to Proceed as the Sole Plaintiff

Dropping Rossville as a party leaves Mansoor Charaniya as the sole plaintiff in this case, but, as he himself acknowledges, "[n]ormally, the plaintiff in a suit challenging the denial of an employment-based visa petition in federal court is the petitioning employer."  Pls.' Resp. at 3. Indeed, several courts, including two in this District, have held that the beneficiary of an I-140 petition may not sue to challenge the agency's denial of that petition.  See Pls.' Resp. at 4–5; Defs. Reply to Pls.' Resp. [ECF No. 28] ("Defs.' Reply") at 4–6.  It is therefore necessary to determine whether Mr. Charaniya may proceed as the sole plaintiff or whether dropping Rossville as a party is fatal to the action.  Following the lead of the parties' supplemental briefing and of other courts confronting similar situations, the Court will assess whether Mr. Charaniya (a) possesses Article III standing in this matter and (b) possesses a statutory cause of action to challenge the agency's denial of Rossville's I-140 petition, i.e., whether his injury falls "arguably within the zone of interests protected or regulated by the statute," Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 224 (2012) (quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)).

### A.   Article III Standing

Although the government concedes that Mr. Charaniya "sufficiently alleges a redressable injury as required for constitutional standing," Defs.' Reply at 3, the Court "has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties," Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009).  In order for a lawsuit to constitute a "Case[]" or "Controvers[y]" over which federal courts have jurisdiction, U.S. Const.

art. III, § 2, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

In the present suit, Mr. Charaniya contends that USCIS unlawfully denied Rossville's visa petition on his behalf, a decision that prevented him not only from receiving the visa but also from applying to become a lawful permanent resident of this country.  This is a sufficient injury-in-fact: "[L]os[ing] a significant opportunity to receive an immigrant visa . . . . is itself a concrete injury" cognizable by the federal courts.  Patel, 732 F.3d at 638 (internal quotation marks and citation omitted).  Moreover, this injury is directly traceable to allegedly unlawful conduct by the agency (the AAO Decision), and the relief Mr. Charaniya seeks—a declaration compelling defendants to reopen and adjudicate the petition, see Compl. at 13–14—would redress the allegedly unlawful deprivation of his opportunity to receive a visa.  See, e.g., Khedkar, 2021 WL 3418818, at *4; Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec., 783 F.3d 156, 161–63 (3d Cir. 2015); Patel, 732 F.3d at 638.  Mr. Charaniya thus satisfies the familiar tripartite test for Article III standing.

## B.  **Statutory Cause of Action**

In addition to constitutional standing, the Court must also determine whether Mr. Charaniya possesses a statutory cause of action in this matter.  In order to challenge agency action under the APA, a plaintiff must assert an interest that falls "arguably within the zone of interests protected or regulated by the statute."[11]  Match-E-Be-Nash-She-Wish Band, 567 U.S. at 224 (quoting Data Processing, 397 U.S. at 153).  As the inclusion of the word "arguably" suggests, this

---

[11] Formerly understood as a "prudential standing" inquiry, the Supreme Court has since clarified that the zone-of-interests test "asks the statutory question of whether 'a legislatively conferred cause of action encompasses a particular plaintiff's claim.'"  Mendoza v. Perez, 754 F.3d 1002, 1016 (D.C. Cir. 2014) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127 (2014)).

test "is not meant to be especially demanding," and "the benefit of any doubt goes to the plaintiff." Id. (citation omitted). Indeed, "[a] would-be plaintiff is outside the statute's 'zone of interests' only if 'the plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."'" Myersville Citizens for a Rural Cmty., Inc. v. F.E.R.C., 783 F.3d 1301, 1316 (D.C. Cir. 2015) (quoting Match-E-Be-Nash-She-Wish Band, 567 U.S. at 225).

Since the APA provides only a generic cause of action, a plaintiff seeking review under 5 U.S.C. § 702 must fall within the zone of interests of the statute providing the ultimate rule of decision—here, the INA. See, e.g., Vemuri, 845 F. Supp. 2d at 130 ("[R]eference to the APA generally is inadequate because the APA incorporates the zone of interests protected by the 'relevant statute,' in this case, the INA."). Courts must toe a fine line when determining what interests are protected by a given statute. On the one hand, courts must "identify the relevant provisions with some particularity" and may not adopt a "kitchen-sink approach." Id. at 130–31 (quoting Programmers Guild, Inc. v. Chertoff, 338 F. App'x 239, 242 (3d Cir. 2009)); see also Air Courier Conf. of Am. v. Am. Postal Workers Union, 498 U.S. 517, 529–30 (1991). On the other hand, courts must "not look at the specific provision said to have been violated in complete isolation." Indian River Cnty. v. U.S. Dep't of Transportation, 945 F.3d 515, 530 (D.C. Cir. 2019) (quoting Nat'l Petrochemical & Refiners Ass'n v. EPA, 287 F.3d 1130, 1147 (D.C. Cir. 2002)). Instead, they must also consider both "the 'context and purpose' of the relevant statutory provisions and regulations at issue" as well as "other provisions to which [the principal provision] bears an 'integral relationship.'" Id. (first quoting Match-E-Be-Nash-She-Wish Band, 567 U.S. at 226; then quoting Nat'l Petrochemical & Refiners Ass'n, 287 F.3d at 1147).

Whether the beneficiary of an I-140 petition may sue to challenge the agency's denial of that petition is a question that has produced a serious split of authority, not only among courts around the country but also among different judges in this District.  On the one hand, three cases from this District—George, 693 F. Supp. 2d at 130; Pai, 810 F. Supp. 2d at 108–12; and Vemuri, 845 F. Supp. 2d at 130–34—have squarely held that the beneficiary of a denied I-140 petition may not sue to challenge the agency's decision.  Several cases from other Districts have reached the same conclusion (though often without much analysis).  See Ibraimi v. Chertoff, Civ. A. No. 07-CV-3644 (DMC), 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008); S & J Roofing Contractors v. Patterson, No. 10-60964-CIV, 2011 WL 1045643, at *2–3 (S.D. Fla. Mar. 17, 2011); see also Blacher v. Ridge, 436 F. Supp. 2d 602, 606 n.3  (S.D.N.Y. 2006) (temporary work visa); Morris v. Gonzales, Civ. A. No. 06-4383, 2007 WL 2740438, at *6 (E.D. Pa. Sept. 19, 2007) (same); Li v. Renaud, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010) (I–130 petition); Yan Won Liao v. Holder, 691 F. Supp. 2d 344, 350 n.6 (E.D.N.Y. 2010) (same).

On the other hand, two courts in this District have concluded that a beneficiary of an I-140 petition may sue in his own right to challenge a denial of that petition, see Maramjaya v. USCIS, Civ. A. No. 06-2158 (RCL), 2008 WL 9398947, at *4–5 (D.D.C. Mar. 26, 2008); Khedkar, 2021 WL 3418818, at *5, and three courts of appeals have reached that same conclusion in the years since Vemuri, see Patel, 732 F.3d at 636–37; Kurapati v. USCIS, 775 F.3d 1255, 1260–61 (11th Cir. 2014) (per curiam); Mantena, 809 F.3d at 732–33; see also Musunuru v. Holder, 81 F. Supp. 3d 721, 726–27 (E.D. Wis. 2015), rev'd on other grounds, 831 F.3d 880 (7th Cir. 2016); Shalom Pentecostal Church, 783 F.3d at 164  (finding that prospective special immigrant religious workers under § 1153(b)(4) had a statutory cause of action to challenge a denial of their petition).

Having closely reviewed the analysis put forth in all of these cases and, of course, the statute in question, the Court agrees with the Second, Sixth, and Eleventh Circuits and with the decisions in <u>Maramjaya</u> and <u>Khedkar</u>: the interest asserted by Mr. Charaniya as the beneficiary of Rossville's I-140 petition <u>is</u> arguably within the zone of interests to be protected or regulated by the statute.

The principal statutory provision at issue here, as every court agrees, is 8 U.S.C. § 1153(b)(3)(A)(i), which provides that "[v]isas shall be made available . . . to . . . [q]ualified immigrants who are capable, at the time of petitioning for classification under this paragraph, of performing skilled labor (requiring at least 2 years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States." Yet, as described <u>supra</u>, many other provisions of the INA bear an "integral relationship" with this provision. Section 1153(b)(3)(A) works hand-in-hand with 8 U.S.C. § 1182(a)(5)(A), which requires DOL to certify that "there are not sufficient workers who are able, willing, qualified . . . and available" to fill a given job opportunity and that "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed" before a petition will be approved. <u>See also</u> <u>id.</u> § 1153(b)(3)(C) (requiring a "determination . . . pursuant to the provisions of section 1182(a)(5)(A)" before issuing a visa under subparagraph A); <u>Pai</u>, 810 F. Supp. 2d at 109 (treating § 1182 as integrally related to § 1153 in assessing the relevant zone of interests). Likewise, 8 U.S.C. § 1255, which permits the recipient of a permanent employment visa to "adjust" his status to that of permanent resident, is also an integral component of the INA's employment-based immigration scheme—indeed, adjustment of status has been a part of this system since Congress first enacted the INA in 1952, <u>see</u> Immigration and Nationality Act of 1952, Pub. L. 82-414, § 245, 66 Stat. 163, 217 (1952). Also relevant is the

18

more recent "portability provision," 8 U.S.C. § 1154(j), which had wide-ranging effects on how I-140 beneficiaries apply for adjustment of status. See Patel, 732 F.3d at 635–36 (citing the "integral relationship" rule and considering sections 1154 and 1255); Khedkar, 2021 WL 3418818, at *5 (considering sections 1154 and 1255). Together, these statutory provisions comprise the INA's employment-based immigration scheme.

Having considered the text and purpose of this scheme, the Court is convinced that the non-citizen beneficiary of an I-140 petition falls at least arguably within the interests protected by the statute.[12]   The first clue is the text of § 1153(b)(3)(A) itself: "Visas shall be made available . . . to the following classes of aliens," including "[q]ualified immigrants who are capable . . . of performing skilled labor." It is the "aliens" or "qualified immigrants" who are the object of this provision, both grammatically and conceptually. Although an immigrant's potential employer petitions for a visa, § 1153 "ma[kes] it available" to the immigrant himself, and "it is the immigrant who receives the visa and who applies for adjustment of status" if his employer's I-140 petition is approved, Kurapati, 775 F.3d at 1261; accord Khedkar, 2021 WL 3418818, at *5 ("The INA grants visas not to [petitioning employers] but to the beneficiaries themselves.").

The availability of permanent work visas and the possibility of adjusting to permanent resident status also indicates that the INA protects the interests of beneficiaries of I-140 petitions. "If § 1153(b)(3) provided employment visas only for the benefit of U.S. employers . . . a visa that

---

[12] Several other courts—and defendants in this case, Defs.' Reply at 2–3—argue that a beneficiary may not sue in federal court because USCIS's internal regulations state that only the petitioner (and not the beneficiary) is an "affected party" with "legal standing in a proceeding." 8 C.F.R. § 103.3(a)(1)(iii)(B); see, e.g., Pai, 810 F. Supp. 2d at 105 & n.2; Ibraimi, 2008 WL 3821678, at *3; S & J Roofing Contractors, 2011 WL 1045643, at *3. But the Court considers the agency's regulations to be irrelevant to the question of whether a party has a statutory cause of action under the zone-of-interests test. USCIS is well within its rights to establish procedures governing its own internal proceedings, but "standing" before the agency "do[es] not affect the beneficiary's access to federal court," Khedkar, 2021 WL 3418818, at *4; accord, e.g., Mantena, 809 F.3d at 732 ("[T]he fact that [plaintiff] may not have satisfied USCIS's definition of 'legal standing' before the agency does not mean she does not have standing to bring this lawsuit in federal court.").

lasted as long as the employer needed the alien's services would do. That Congress rejected that approach in § 1153(b)(3) suggests that the provision protects the interests of aliens as well as employers." Patel, 732 F.3d at 636; accord Khedkar, 2021 WL 3418818, at *5.  And § 1154(j)'s portability provision makes it even clearer that the employment-based immigration scheme protects the interests of beneficiaries as well as petitioning employers.  "Congress passed the portability provision to give I-140 beneficiaries the flexibility to change jobs without risking their shot at permanent residency."  Khedkar, 2021 WL 3418818, at *5; accord Ravulapalli, 773 F. Supp. 2d at 45.  Even USCIS has acknowledged that "beneficiaries who . . . properly request to port . . . are within [§ 1154(j)'s] zone of interests," Matter of V-S-G-Inc., Adopted Decision 2017-06, 2017 WL 5625783, at *11 (A.A.O. Nov. 11, 2017), in part because "the legislative history . . . only evidences Congressional concern with beneficiaries who were enduring lengthy processing delays [and] no one else," id. at *11.  These features of the statute's text and implementation support the conclusion that the interest of a noncitizen seeking a permanent employment visa falls within the zone of interests protected by the Act.

In reaching the contrary conclusion, the Pai and Vemuri courts focused instead on the DOL certification provision, 8 U.S.C. § 1182(a)(5)(A), and, more generally, on their understanding of the purpose of the INA's employment-based immigration scheme: "to protect U.S. workers from the adverse effects of noncitizens emigrating for employment purposes."  Vemuri, 845 F. Supp. 2d at 132; accord Pai, 810 F. Supp. 2d at 111.  As a consequence, both courts concluded that an I-140 beneficiary's "interests run contrary to the purpose of the relevant statutory provisions" and thus fall outside the relevant zone of interests.  Vemuri, 845 F. Supp. 2d at 134; accord Pai, 810 F. Supp. 2d at 111 ("[Beneficiaries'] interests are seemingly inconsistent with the interests of

American workers. . . . This Court is therefore compelled to conclude that [the beneficiary lacks prudential standing].").

The Court respectfully disagrees with this narrow understanding of the purpose of the INA's employment-based immigration scheme: rather than one exclusionary, protectionist purpose, the statute "reflects a compromise between multiple purposes."  Patel, 732 F.3d at 636. To be sure, the INA protects many interests, including the interest of American employers in finding and hiring qualified non-citizens, see Pai, 810 F. Supp. 2d at 111, and the interest of American workers in avoiding an influx of low-wage foreign workers, see, Fed'n for Am. Immigr. Reform, Inc. v. Reno, 93 F.3d 897, 903 (D.C. Cir. 1996) (listing § 1153(b)(3)(A) as a "clear example" of an immigration provision "reflect[ing] a clear concern about protecting the job opportunities of United States citizens").  And the INA does indeed contain "safeguards for American labor," in the form of the DOL certification requirement.  Pai, 810 F. Supp. 2d at 110–11 (quoting H.R. Rep. No. 82-1365, at 50–51 (1952), as reprinted in 1952 U.S.C.C.A.N. 1653, 1705).

But Congress declined to pursue any one of those interests to the exclusion of the others. Instead of banning all foreign workers or opening the borders, the INA struck a balance between admitting needed non-citizen workers on the one hand and protecting domestic labor interests on the other.  Under the INA's system, a non-citizen skilled worker may receive a visa, immigrate, and eventually become a permanent resident, but only if the government first ensures, through DOL certification, that his admission will not harm American labor interests. This process reconciles the competing interests of American workers and of prospective immigrants, and, in the judgment of the House Judiciary Committee, it "adequately provide[s] for the protection of American labor against an influx of aliens entering the United States for the purpose of performing

21

skilled or unskilled labor."   H.R. Rep. No. 82-1365, at 51 (1952), as reprinted in 1952 U.S.C.C.A.N. 1653, 1705.

At most, the DOL certification requirement evinces Congress's desire that some limits be placed on employment-based immigration and that those limits be calibrated to the needs of the American labor market.  It does not demonstrate that the entire employment-based immigration scheme is concerned only with the protection of American workers.  Thus, while the Pai and Vemuri courts—and indeed Congress—may be correct that the interests of visa beneficiaries run contrary to the interests of American workers, e.g., Pai, 810 F. Supp. 2d at 111, that does not mean that a beneficiary's interest is inconsistent with the interests protected by the INA, see Kurapati, 775 F.3d at 1261 ("Even assuming that Congress intended to benefit American employers and protect jobs for American citizens in creating the framework for employment visas, that does not rule out that Congress acted with the intent to regulate or protect immigrants' interests.").  On the contrary, I-140 beneficiaries have, by definition, already been certified as immigrants whose admission would not harm American labor interests—they are thus precisely the group for whom "[v]isas shall be made available" under § 1153(b)(3)(A).  If, as he claims, Mr. Charaniya is eligible for an EB-3 visa under the statute, then he is exactly who Congress designed the employment-based immigration scheme to admit.

This understanding of the statutory scheme, on top of the fact that "[t]he text of the INA leaves no doubt that the interests of employment-based visa petition applicants . . . are directly related to the purposes of the INA," Mantena, 809 F.3d at 733 (quoting Shalom Pentecostal Church, 783 F.3d at 164), means that Mr. Charaniya clears the zone-of-interests test's low bar. Especially after giving Mr. Charaniya "the benefit of any doubt," Match-E-Be-Nash-She-Wish Band, 567 U.S. at 225, this Court, agreeing with the three courts of appeals that have most recently

considered this question, concludes that Mr. Charaniya's interest in the lawful adjudication of Rossville's I-140 petition falls at least arguably within the zone of interests protected by the INA. This action may therefore proceed with Mr. Charaniya as the sole plaintiff.

## III.    The Parties' Cross-Motions for Summary Judgment

### A.   Legal Standard

"When a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal."  Waterkeeper All., Inc. v. Wheeler, Civ. A. No. 18-2230 (JDB), 2020 WL 1873564, at *3 (D.D.C. Apr. 15, 2020) (cleaned up) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  Although "summary judgment is the proper mechanism for review" of agency action, Young v. U.S. Dep't of Health & Hum. Servs., Civ. A. No. 17-2428 (JDB), 2021 WL 3472656, at *8 (D.D.C. Aug. 6, 2021), "the typical Federal Rule 56 summary-judgment standard does not apply," and the court instead "decid[es], as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review," Conservation L. Found. v. Ross, 422 F. Supp. 3d 12, 27 (D.D.C. 2019).

The APA provides that a federal court reviewing agency action "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The bar for arbitrary and capricious action is high: '[i]t is not enough . . . that the court would have come to a different conclusion from the agency,' nor can the court 'substitute its own judgment for that of the agency."  Young, 2021 WL 3472656, at *8 (alteration in original) (quoting Conservation L. Found., 422 F. Supp. 3d at 27–28).  Rather, the court must uphold an agency's "factual determinations if on the record as a whole, there is such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion."  Verizon v. FCC, 740 F.3d 623, 643 (D.C.

Cir. 2014) (citation omitted).  In short, the agency's decision will survive APA review so long as it "contain[s] a rational connection between the facts found and the choice made."  <u>McKinney v. Wormuth</u>, 5 F.4th 42, 47 (D.C. Cir. 2021) (quoting <u>Dickson v. Sec'y of Def.</u>, 68 F.3d 1396, 1404 (D.C. Cir. 1995)).

### B.  **Analysis**

In the AAO Decision, USCIS denied Rossville's I-140 petition on the basis that it had failed to show by a preponderance of the evidence that Mr. Charaniya had two years of experience as a store manager, as required by the statute, regulations, and the DOL certification.  AR 3.  The AAO reached this conclusion in two steps.  First, it determined that the two experience letters initially submitted with the petition did not constitute "relevant, probative, <u>and credible</u>" evidence, AR 6 n.9 (emphasis added) (citing <u>Matter of Chawathe</u>, 25 I. & N. Dec. 369, 376 (A.A.O. 2010)), and hence disregarded them, citing various inconsistencies and errors that called the letters' reliability into question.  Then, the agency assessed the remainder of the evidence and concluded that those materials failed adequately to address Mr. Charaniya's previous job responsibilities or managerial experience.[13]

Plaintiff challenges both of these conclusions, arguing that it was wrong for the agency to disregard the experience letters, <u>see</u> Pls.' Cross-Mot. at 12–15, and that the other evidence did in fact prove that Mr. Charaniya had the requisite experience, <u>see id.</u> at 13–18.  The Court will take each of these steps in turn, and it concludes that neither the agency's treatment of the experience letters nor its judgment as to the sufficiency of the remaining evidence was arbitrary, capricious, or an abuse of discretion.

---

[13] In fairness to plaintiff, the AAO Decision did not make this structure explicit.  But upon review, the Court concludes that the foregoing summary is an accurate account of the AAO's reasoning, despite the decision's less-than-pellucid organization.

i.  Credibility of the Experience Letters

In its final decision, USCIS concluded that "the evidence submitted to the record regarding the Beneficiary's prior work experience is not credible," AR 6, and specifically highlighted the identical wording of the initial experience letters, AR 6; the fact that the 4 B's Letter listed an end date for Mr. Charaniya's tenure three months in the future, AR 6; and the fact that the 4 B's letter was signed by the entity's "President" despite Rossville's claim that 4 B's was a sole proprietorship owned by Mr. Charaniya, AR 5 n.6.  Plaintiff contends that "[t]he assumption [based on the identical language] that the experience letters were written by the same individual [is] pure speculation by the Defendants," Pls.' Cross-Mot. at 15, and that USCIS's decision to "discredit[] the two letters because it 'believed' (exact language) without any evidence, that they had been prepared by the same person" was improper because it lacked "proof," id. at 12.

USCIS possesses full fact-finding authority related to visa petitions, and the agency may reject a petitioner's factual assertions if it does not believe that they are true.  See 8 U.S.C. § 1154(b) ("After an investigation of the facts in each case, . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien . . . is eligible for preference under [§ 1153(a) or (b)], approve the petition.");[14] accord Systronics Corp. v. I.N.S., 153 F. Supp. 2d 7, 15 (D.D.C. 2001).  Especially in light of this congressional delegation of fact-finding power, the Court will defer to the agency's factual determinations and only set them aside

---

[14] Although the statute refers to the Attorney General, Congress transferred the power to grant visa petitions to USCIS in the Homeland Security Act of 2002, Pub. L. No. 107-296, § 451(b), 116 Stat. 2135, 2196 (2002) (codified at 6 U.S.C. § 271(b)), and further provided that "reference in any other Federal law to . . . any officer or office the functions of which are so transferred shall be deemed to refer to the . . . component of the Department to which such function is so transferred," id. § 1517 (codified at 6 U.S.C. § 557).  Thus, this reference to the Attorney General in 8 U.S.C. § 1154 should be understood to refer to USCIS.  See, e.g., Poursina v. USCIS, 936 F.3d 868, 869 n.1 (9th Cir. 2019).

if they are unsupported by substantial evidence or represent an abuse of discretion.[15]  See 5 U.S.C. § 706.

The AAO's determination that the experience letters are not credible was not an abuse of discretion.  The fact that the letters were <u>exactly</u> the same, including providing verbatim descriptions of different jobs and featuring the same idiosyncratic usages, see AR 386–87 (using the phrase "employees working <u>under supervision</u> of Mr. Mansoor Charaniya" (emphasis added)), is strong circumstantial evidence that the letters were not written when or by whom Rossville claimed.  Tellingly, before neither the agency nor this Court has Rossville offered any explanation for this remarkable coincidence.  Plaintiff suggests that USCIS was required to have "proof" of the letters' authorship and could not base its credibility determination on "pure speculation."  Pls.' Cross-Mot. at 12, 15.  But USCIS was not required to "prove" anything—it is, after all, the petitioner who carries the burden of proving visa eligibility—and in any event, the letters' identical language <u>is</u> evidence justifying the agency's determination.  It was neither "speculation" nor an abuse of discretion to conclude that the two initial experience letters were not credible.

But of course, the letters' identical language was not the AAO's only basis for concluding that they are not credible.  Rossville has offered no explanation for the fact that the 4 B's Letter, dated from during Mr. Charaniya's tenure as sole proprietor of the business, see AR 231 (affidavit from Mr. Charaniya stating that he "served as the Owner/Manager of [4 B's] from December 2000 through April 2001"), was signed by the "President" of that entity.[16]  And both experience letters

---

[15] As the D.C. Circuit has repeatedly noted, these are really two ways to say the same thing: "abuse of discretion" under § 706(2)(A) "does not substantively differ from the substantial evidence test" under § 706(2)(E). <u>Phoenix Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.</u>, 998 F.3d 999, 1005 (D.C. Cir. 2021) (citing <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.</u>, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J.)).

[16] As the AAO noted, sole proprietorships "generally [do not] have officers such as a president."  AR 5 n.6. Moreover, if anyone were to be in a position to sign a letter as "President" of 4 B's in April 2001, it would have been Mr. Charaniya himself.

(as well as Mr. Charaniya's G-325A form) were riddled with erroneous information, including misspelled corporate names, incorrect phone numbers, non-existent addresses, and, most seriously, the inclusion of dates which plaintiff now claims were months away from the truth. See AR 160–62 (acknowledging all of these errors).

Plaintiff explains most of these inaccuracies by asserting a remarkable concatenation of severe typographical and clerical errors in the independent preparation of all three documents. Id. Rossville submitted some evidence to the agency in support of this claim: the 2017 Maharashtra Letter pinned the errors in its previous letter on the proprietor's secretary, AR 80, while an affidavit by Rossville's former attorney called out by name a paralegal for making "several mistakes and typographical errors" when preparing the G-325A, AR 86–88. But such evidence is far from incontrovertible proof of plaintiff's story. To borrow a line from Carl Sagan, extraordinary claims require extraordinary evidence, and the agency's rejection of Rossville's extraordinary story was not an abuse of discretion. Between the letters' acknowledged factual errors and their identical texts, disregarding the experience letters as unreliable was neither arbitrary, capricious, nor an abuse of discretion.

ii.   Other Evidence Before the AAO

Having determined that the experience letters were not credible, the AAO then considered the remaining evidence submitted by Rossville and concluded that none of it demonstrated that Mr. Charaniya had two years of experience in a managerial position. See AR 7 ("[T]he materials submitted by the Petitioner do not provide independent, objective evidence of the Beneficiary's experience as a manager of Maharashtra Refrigeration. . . . [and the materials regarding 4 B's] do not establish that he also served as manager of the business from May 2000 to June 2001."). Plaintiff challenges this conclusion, arguing that the "plethora of evidence" Rossville submitted

had "reconcile[ed] any . . . inconsistencies," Pls.' Cross-Mot. at 13, and established by a preponderance of the evidence that Mr. Charaniya meets the experience requirements, id. at 18.

First, the Court addresses the evidence regarding Mr. Charaniya's employment at Maharashtra. Rossville submitted a substantial number of documents supporting the existence of Maharashtra Refrigeration and Mr. Charaniya's employment there, including a business card from Maharashtra with Mr. Charaniya's name on it; corporate income statements and tax returns for Maharashtra from the 1990s; Mr. Charaniya's tax returns for the same period; a phone book advertisement for Maharashtra; pictures of Maharashtra's storefront; multiple documents attesting to Maharashtra's relationship with Carrier, a global manufacturer of air conditioners; and the 2017 Maharashtra Letter. See Pls.' Cross-Mot. at 13; AR 74–81, 90–91, 165–229.

Setting the 2017 Maharashtra Letter momentarily to the side, the Court agrees with the agency's conclusion that the other evidence does not "provide independent, objective evidence of the Beneficiary's experience as a manager of Maharashtra Refrigeration." AR 7. Mr. Charaniya's business card (which, the AAO noted, spelled his surname "Charania") does not list a job title or give any indication of his role with Maharashtra, see AR 166; the phone book advertisement does not mention Mr. Charaniya nor does he appear in the photos submitted, AR 224, 227–29; and Mr. Charaniya's income statements only refer to his employment at a "workshop & reseller," failing even to identify Maharashtra as his employer, see AR 174–203.[17]   Although this evidence is

---

[17] In addition, many of the records that appear to be tax or income records for Mr. Charaniya or Maharashtra are not legible and/or are not accompanied by a certified English translation. See AR 204–22. As a result, the AAO did not consider them. AR 4 n.5.

consistent with Mr. Charaniya's employment at Maharashtra, none of these materials offer any proof that Mr. Charaniya held a qualifying managerial position.[18]

This leaves the 2017 Maharashtra Letter, which Rossville submitted as Exhibit H to its appeal to the AAO.  See AR 79–80.  Alone among the additional evidence submitted by Rossville, this letter does indicate on its face that Mr. Charaniya served as a store manager for Maharashtra for at least two years, see AR 80, and plaintiff draws particular attention to it, attacking the AAO's decision for "disbelieving" it without a "valid reason," Pls.' Cross-Mot. at 14; see also id. at 16–17.  Frankly, plaintiff has a point: the agency's treatment of this letter is far from clear.  It appears from the Court's review, however, that the AAO disregarded the 2017 Maharashtra Letter as not credible due to inconsistencies between it and other evidence submitted by Rossville.  See AR 6–7.[19]  The 2017 Maharashtra Letter stated that Mr. Charaniya's tenure at the company commenced in 1991, AR 80, but the AAO noted that other evidence in the record suggested that Maharashtra "began in 1993," AR 7.  In particular, the AAO pointed to a letter from a manager with Carrier stating that "[Maharashtra] ha[s] been our channel partner since 1993," AR 90, and to a translation of a "registration certificate" for Maharashtra which listed Mr. Charaniya as the "Owner" and stated that "this institution has been registered as a shop under Mumbai Shops and Establishment Act 1948 on 4/7/1993," AR 74.  Inferring from these documents that Maharashtra did not exist before 1993, the AAO commented: "It is not clear how the Beneficiary started working for Maharashtra Refrigeration in 1991 when the business began in 1993."  AR 7.

---

[18] In his cross-motion, plaintiff objects that "[t]he fact that Plaintiff Charaniya had a misspelling on his business card or failed to list a job title for Maharashtra does not mean that he did not have a managerial job." Pls.' Cross-Mot. at 16.  Absolutely true—but Mr. Charaniya has gotten the burdens backwards: it was Rossville's burden to show that Mr. Charaniya did hold a managerial position, and a business card without a job title or description does not do so.

[19] Although its reasoning was not explicitly spelled out, it "may reasonably be discerned" from the agency's decision and is thus properly before the Court.  See Dickson, 68 F.3d at 1404 (quoting Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys., 419 U.S. 281, 286 (1974)).

Plaintiff counters that this apparent contradiction stemmed from the AAO's misreading of the documents: neither the registration statement nor the letter from Carrier conclusively state when Maharashtra "opened its doors," plaintiff argues, and the company's existence prior to 1993 is supported by its tax records dating back to 1991 as well as a "certificate of enrollment" dated to 1989.  See Pls.' Cross-Mot. at 15.  But this response is unavailing: in footnote 5 of its decision, the AAO explained that many of the documents Rossville submitted were either "illegible" or were "not properly translated," as they failed to include a certified English translation as required by 8 C.F.R. § 103.2(b)(3).  As such, the AAO could not "meaningfully determine whether the translated material is accurate and thus supports the Petitioner's claims" and therefore did not consider them. AR 4 n.5.  From the Court's review of the administrative record, both the certificate of enrollment, AR 167, and the corporate tax records referenced by plaintiff, AR 169–74, are indeed either illegible and/or untranslated.

It was neither contrary to law nor an abuse of discretion for the agency to refuse to consider these documents.  The agency accurately cited and correctly applied the regulation requiring a certified translation of any document containing material in a foreign language, 8 C.F.R. § 103.2(b)(3), and many courts have upheld similar applications of regulations requiring certified translations, see, e.g., Abdul-Karim v. Ashcroft, 102 F. App'x 613, 614–15 (9th Cir. 2004) (upholding immigration judge's conclusion that certain newspaper clippings submitted by the petitioner were unreliable in part because they did not include certified translations); Bleta v. Gonzales, 174 F. App'x 287, 291 (6th Cir. 2006) (upholding decision of immigration judge to exclude documents which lacked translation certificates as required by a regulation identical to the one applied here); see also Millian-Zamora v. Ashcroft, 228 F. Supp. 2d 272, 276–77 (E.D.N.Y. 2002) (rejecting constitutional challenge to immigration judge's decision not to accept untranslated

Spanish-language documents and citing § 103.2(b)(3)).[20]   This is not a mere technicality: the requirement of a certified translation is, as the AAO indicated, designed to ensure that the agency considers only accurate and reliable evidence, see AR 4 n.5, and it is consistent with the agency's insistence on basing its decisions on "independent, objective evidence," see AR 7 (citing Matter of Ho, 19 I. & N. Dec. 582, 591–92 (B.I.A. 1988)).   Especially where a petitioner has, by its own admission, previously submitted multiple documents containing errors and inaccuracies, USCIS did not act arbitrarily by insisting that evidence comply with a regulation designed to ensure the submission of accurate, reliable documents.

In light of the documents properly before it, the agency's determination that the 2017 Maharashtra Letter was not credible based on the conflicting dates was not an abuse of discretion. Although not incontrovertible proof that Maharashtra was not in business in 1991 (an unnecessarily high bar—the agency did not need to "prove" this negative in order to make its credibility determination), the 1993 registration certificate in particular certainly suggests that Maharashtra opened in 1993.[21]   This inconsistency, combined with Rossville's extensive history of submitting incredible and/or erroneous documents in connection with this petition (and indeed in connection with Mr. Charaniya's tenure at this particular employer), constitutes sufficient "relevant evidence as a reasonable mind might accept as adequate to support [USCIS's] conclusion." Verizon v. FCC, 740 F.3d at 643 (citation omitted).

---

[20] In the same vein, the Second Circuit has held that the agency itself may not rely on foreign-language documents which lack a certified translation—in Zhong v. U.S. Dep't of Just., 480 F.3d 104 (2d Cir. 2007), the court reversed the decision of an immigration judge who based his decision in part on his own interpretation of an untranslated Arabic document.  Id. at 130 ("[I]t is patently improper to draw conclusions from a document written in a foreign language in the absence of a certified translation." (citing Augustin v. Sava, 735 F.2d 32, 37 (2d Cir. 1984))).

[21] Although not mentioned explicitly in the AAO's decision, the registration certificate also includes a box at the bottom for renewals of the certification, and the instant certificate notes renewals in 2000 and 2002.  AR 74.  This supports the inference drawn by the AAO that Maharashtra was first registered in 1993; if it had been registered, say, in 1989 and had then renewed its registration in 1993, said renewal would have been marked on the 1989 certificate rather than necessitating a new 1993 certification.

It is a similar story with respect to Mr. Charaniya's employment at (and ownership of) 4 B's.  In support of its contention that Mr. Charaniya was the sole proprietor and store manager of 4 B's from December 2000 through April 2001, Rossville submitted: a sworn affidavit from Mr. Charaniya stating that he bought and managed "4-B's Food & Grocery" from December 2000 through April 2001; a handwritten contract evidencing his purchase of the store; a void check listing "Mansoor N. Charaniya DBA 4-B's Food" as the account holder; evidence of a bank account in the name of "Mansoor Charaniya DBA 4-B's Grocery"; a tax document, cigarette license, and beverage permit issued to either "4-B's Food" or "4-B's Food and Grocery"; utility bills for the premises; Mr. Charaniya's Sam's Club card; and email correspondence with a representative of AT&T confirming that the phone number previously provided for 4 B's was in service until 2006.  See AR 231–46.

At the outset, the AAO refused to consider Mr. Charaniya's affidavit since it did not constitute "independent, objective evidence," and it also raised concerns about the credibility of other pieces of evidence.  For instance, the sworn affidavit submitted by Mr. Charaniya stated that he purchased the store in December, AR 231, while the contract of sale lists the date as November 28, AR 232.  Then, considering the remaining evidence, the AAO concluded that, although the documents did "indicate that the Beneficiary was the owner of 4 B's Food Mart for a short period of time between the end of 2000 and the beginning of 2001," they did "not establish that he also served as manager of the business."  AR 7.

Plaintiff, unsurprisingly, disagrees, arguing that the mere existence of the municipal permits, the void check, and the bank statement is "prima facie and direct evidence of Plaintiff Charaniya's managerial role," as they support the conclusion that he was involved with "prepar[ing] banking transactions, reconciling cash with receipts, and maintaining payroll and tax

accounts."  Pls.' Cross-Mot. at 17; see also AR 379 (DOL certification listing these among the proposed job duties).  This argument goes too far—although the cited evidence is not inconsistent with Charaniya working as a manager, it is not "direct evidence" that Charaniya held a qualifying managerial position at 4 B's.  And the Court agrees with the agency's conclusions as to the rest of the evidence, which, at best, established that the business existed and that it was Mr. Charaniya's sole proprietorship.  It was not arbitrary, capricious, or an abuse of discretion for the agency to find that these documents failed to demonstrate by a preponderance of the evidence that Mr. Charaniya was a qualifying manager for the five months he owned 4 B's.

In sum, every step in the AAO's decision was supported by the evidence and was neither arbitrary, capricious, nor an abuse of discretion.  The agency reasonably concluded that the 4 B's Letter and the 2002 Maharashtra Letter were not credible; it did not abuse its discretion in disregarding the 2017 Maharashtra Letter due to contradictions between it and other evidence; and it rationally concluded that the remaining evidence submitted by Rossville failed to demonstrate that Mr. Charaniya satisfied the eligibility requirements of the petition.  The Court thus will not set aside the agency's decision to deny Rossville's I-140 petition.

### iii.  Portability Provision

Finally, Mr. Charaniya contends that defendants erred in denying him permission to port his I-485 application to a new employer.  See Pls.' Cross-Mot. at 18–19.[22]  The Court disagrees. During the pendency of Rossville's I-140 petition, Mr. Charaniya twice sought to port his I-485 application, first to Shivkrupa, LLC, AR 134–37, and then to Anusha Investments, Inc, AR 93, each of which submitted documentation attesting that they had offered Mr. Charaniya a position

---

[22] As best the Court can tell, this is a challenge not to the agency's denial of Mr. Charaniya's I-485 application in 2017, see AR 129–30, but instead to the AAO's comment in its decision that "the Beneficiary is not eligible to port to another employer under [the portability provision]" because "the [I-140] petition is not approvable," AR 11.

as a store manager.   Because Mr. Charaniya is actually eligible for the predicate employment visa, he argues, the agency must now process his porting requests.

As explained above, however, a beneficiary's I-140 petition must be "valid," i.e., approvable at the time it was filed, before he may port to a new employer.  See Khedkar, 2021 WL 3418818, at *6; Ravulapalli, 773 F. Supp. 2d at 47; George, 693 F. Supp. 2d at 131.  This is precisely what the AAO told Rossville in its decision, AR 10–11, and it was correct.  Indeed, plaintiff seems to acknowledge that his portability argument is contingent on the Court ruling in his favor with respect to the underlying I-140 petition.  See Pls.' Cross-Mot. at 19; Pls.' Reply [ECF No. 23] at 7.  Since the Court concludes that USCIS did not abuse its discretion in denying Rossville's I-140 petition on behalf of Mr. Charaniya, it likewise concludes that the AAO was correct in denying Mr. Charaniya's request to port his I-485 application.

## Conclusion

In sum, although Rossville lacks capacity to sue as an administratively dissolved corporation, that incapacity is not fatal to this action, as Mr. Charaniya possesses both constitutional standing and a statutory cause of action to challenge the agency's denial of Rossville's petition on his behalf.  That challenge, however, ultimately fails: USCIS did not abuse its discretion in concluding that Rossville failed to demonstrate that Mr. Charaniya met the relevant experience requirements.  Therefore, the denial of Rossville's I-140 petition was neither arbitrary nor capricious.  Likewise, the AAO correctly applied the law governing the portability of I-485 petitions, properly denying Mr. Charaniya's request to port in light of the denial of the predicate I-140 petition.  For the foregoing reasons, the Court will grant defendants' motion for summary

judgment and deny plaintiff's cross-motion for summary judgment.  An Order to this effect will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>December 10, 2021</u>